JOHN J. KACZMARSKI vs. MAYOR OF SPRINGFIELD
& another.

Hampden.   October 10, 1963. — November 5, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Parks.   Municipal Corporations,* Officers and agents, Parks.

The board of park commissioners of a city, after its adoption of the
Plan A form of government, was a municipal board within the purview
of G. L. c. 43, §§ 52 and 54, and under those sections, which by § 11
superseded the inconsistent provisions of c. 45, § 2, the mayor of the
city lawfully removed a park commissioner and appointed another in
his place without action by the city council.

PETITION for writ of mandamus filed in the Superior
Court on April 2, 1962.

The case was heard by *Good,* J.

*John J. O'Connor,* Associate City Solicitor, for the respondents.

*S. Thomas Martinelli* for the petitioner.

WHITTEMORE, J.   The mayor of Springfield and Leroy
Clayborne have appealed from an order of the Superior
Court which directs the issuance of a writ of mandamus to
cancel and annul both the removal by the mayor of the petitioner as a member of the board of park commissioners and
the mayor's appointment of Clayborne to that post.   The
removal and appointment occurred on March 15, 1962, without city council action.

The order is based on the ruling that G. L. c. 45, § 2, is
applicable.   That section provides: "The mayor of a city
may, with the approval of the city council, appoint a board
of park commissioners for said city . . . .   A commissioner
may be removed . . . by a vote of two thirds of all the
members of a city council."

The mayor acted under G. L. c. 43, §§ 52 and 54, which are
a part of Springfield's Plan A ("responsible executive" —

1915 Senate Doc. No. 254, p. 23) charter.   That charter was
adopted by the city to be effective on the first Monday of
January, 1962; it superseded the charter of St. 1852, c. 94
(as amended).   Section 52 provides: "Upon the adoption
of Plan A, all heads of departments and members of munici-
pal boards, except the school committee, officials appointed
by the governor, and assessors if elected by vote of the peo-
ple, as their terms of office expire, shall be appointed by the
mayor without confirmation by the city council."   Removal
power is set out in § 54: "The mayor may remove the head
of a department or member of a board by filing a written
statement with the city clerk setting forth in detail the spe-
cific reasons therefor, a copy of which shall be delivered or
mailed to the person thus removed, who may make a written
reply, which, if he desires, may be filed with the city clerk;
but such reply shall not affect the action taken unless the
mayor so determines.   This section shall not apply to the
school committee, or to officials appointed by the governor,
or to assessors if elected by the people."

The respondents contend that the applicability of the
mayor's Plan A powers is established by G. L. c. 43, § 11:
". . . [T]he form of government under the plan adopted
by the city shall supersede the provisions of its charter and
of the general and special laws relating thereto and incon-
sistent herewith . . . ."

We agree.   We hold, for the reasons stated below, that
the board of park commissioners is a municipal board
within the purview of G. L. c. 43, §§ 52 and 54.   The board
is a "department" of the city subject to G. L. c. 44, § 31.
See *McCarthy* v. *Malden,* 303 Mass. 563, 565.   The munici-
pality, of course, provides its funds. *Ibid.* G. L. c. 40,
§ 5 (5) and last clause; c. 45, § 3; c. 40, § 14; c. 44, § 7 (2).
The board makes reports of its "doings and detailed state-
ments of all receipts, expenditures and liabilities . . . to
the city council annually . . . ."   G. L. c. 45, § 9.   The Gen-
eral Court has expressly referred to it as a board of "its
city or town."   G. L. c. 45, § 3.   Even if the park board had
an unusual relationship to the structure of municipal gov-
ernment it could, nevertheless, be a municipal board in im-

portant aspects. *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 234 (school committee). *Municipal Light Commn. of Taunton* v. *State Employees' Group Ins. Commn.* 344 Mass. 533, 534–536. But we note no significant anomaly in respect of the place of park boards in the group of agencies which govern municipal affairs. Of course, the parks which a park board creates and administers are held and maintained by the municipality for the benefit of all members of the public. *Lowell* v. *Boston,* 322 Mass. 709, 731, app. dism. sub nom. *Pierce* v. *Boston,* 335 U. S. 849. But town ways are likewise available to all the public. That park land may be disposed of only on specific legislative authorization (*Jacobson* v. *Parks & Recreation Commn. of Boston,* 345 Mass. 641, 644), does not make the board which acquired it less a municipal board.

It is not significant that the provisions as to parks are in a separate chapter. There are special chapters as to public schools. See G. L. cc. 70, 71, 72, 74, 76. The petitioner points out that §§ 31–36 of c. 43 contain general provisions for the election, organization and powers of school committees in any city operating under any of the charters provided for in that chapter. There can, therefore, be no doubt that the school committee is "classed with departments and boards" in c. 43, subject, however, to the stated exceptions. *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 234. G. L. c. 43, §§ 52, 54, 60, 61, 67, 81, 95, 122, 124. It is clear that general provisions for the establishment of municipal boards may be found outside c. 43. See, e.g., G. L. c. 41.

*Strachan* v. *Mayor of Everett,* 326 Mass. 659, is illuminating. In 1891, Everett accepted St. 1882, c. 154 (the forerunner of G. L. c. 45). Everett's charter was enacted in St. 1892, c. 355. Section 35 of this charter, unlike a general plan charter under G. L. c. 43, made express reference to parks: "The city council may from time to time, subject to the provisions of this act and in accordance with general laws, if they exist in any particular case, provide by ordinance for the establishment of additional boards and other

offices . . . [and] for the direction and custody of public parks." Section 29 of the charter provided that "[t]he mayor shall appoint, subject to the confirmation or rejection of the board of aldermen, all the officers of the city, unless their election or appointment is herein otherwise provided for. . . . Any officer so appointed may be removed by the mayor for such cause as he shall deem sufficient . . . ." It was held (p. 661) that the scope of § 29 was limited by § 35, that is, the appointment of a park commissioner was "herein otherwise provided for" so that the appointment and removal provisions of § 29 were inapplicable. This decision, although different in result because of the special statute involved, recognizes that a park commissioner is a municipal officer.

The petitioner relies on *Crocker* v. *Deschenes,* 287 Mass. 202, 207–209, which can be cited to the proposition that one who is a public officer operating under legislative mandate is not a municipal officer for the purpose of appointment and removal under a plan charter. But in *Young* v. *Mayor of Brockton, ante,* 123, 125, we said of the *Crocker* case and of *McDonald* v. *Superior Court,* 299 Mass. 321: "These holdings are founded primarily, we think, in the importance of uniformity in the administration of a State wide statute." The boards involved in those cases were alcoholic liquor licensing boards, and they operated under a State wide statutory scheme. See G. L. c. 138, §§ 67, 10A (compare § 9). The governing statute was enacted in 1933 and amended (as to § 4) in 1934 at a time when c. 43 provided for Plans A through D, with differing provisions as to appointment and removal, some of which were inconsistent with c. 138, §§ 4 and 5, the appointment and removal provisions as to local licensing boards. The established construction of the effect of these statutes on each other dates from 1934 (*Crocker* v. *Deschenes,* 287 Mass. 202) and 1938 (*McDonald* v. *Superior Court,* 299 Mass. 321). It is now well established that officers who have the obligations and immunities of public officers may nonetheless be officers of a municipality. *Commonwealth* v. *Dowe,* 315 Mass. 217, 222–224. *Williams* v.

*City Manager of Haverhill,* 330 Mass. 14, 15–16. *Commonwealth* v. *Oliver,* 342 Mass. 82, 83–84.

There is in c. 45 no aspect of a State wide plan for supervision or control of park boards. Like c. 43 itself which empowers cities to change their charters without legislative action, c. 45 is intended to give municipalities the power to establish park commissions without special legislative action and thereby to establish another local board. The importance of uniformity in the construction of the provisions of a city's c. 43 charter which relate to the appointment and removal of members of municipal boards is the controlling consideration.

The order is vacated and an order is to be entered in the Superior Court dismissing the petition.

*So ordered.*