JOHN W. COX *v.* COLONIAL MOBILE HOME PARK, INC.
(10702)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 28, 1992—decision released February 4, 1993

*Eric C. Hard,* with whom, on the brief, was *George Sherman,* for the appellant (defendant).

*Philip L. Steele,* for the appellee (plaintiff).

DUPONT, C. J. The principal issue to be decided in this declaratory judgment action is whether a rule promulgated by the defendant prohibiting the use of

motorcycles within the confines of its mobile home park exceeds the authority given to mobile home park owners to regulate such activities under General Statutes § 21-70 (d).[1] The trial court determined that the rule is unenforceable because it does not comport with the requirements of that statute. Although the court recognized that owners of mobile home parks can regulate motor vehicle operation within a park, it held that the rule could not stand because it was not reasonably related to the purpose for which it was adopted, namely, the promotion of the safety of the residents and the prevention of excessive noise.[2] The court, therefore, granted the plaintiff the requested declaratory relief,

[1] General Statutes § 21-70 (d), formerly part of General Statutes (Rev. to 1991) § 21-70 (b), applies to owners of mobile home parks and provides: "An owner, from time to time, may adopt a rule or regulation, however described, concerning the resident's use and occupancy of the premises. Such rule or regulation shall be enforceable against the resident only if (1) the purpose of the rule or regulation is to promote the convenience, safety or welfare of the residents, preserve the owner's property from abusive use or make a fair distribution of services and facilities held out for the residents generally; (2) such rule or regulation is reasonably related to the purpose for which it is adopted; (3) such rule or regulation applies to all residents on the premises in a fair manner, provided reasonable exemptions may be made for good cause; (4) such rule or regulation is sufficiently explicit in its prohibition, direction or limitation of the resident's conduct to fairly inform him of what he shall or shall not do to comply, and (5) the resident has written notice of such rule or regulation at the time he enters into the rental agreement or when such rule or regulation is adopted. A rule or regulation having the effect of substantially modifying the terms of a rental agreement previously entered into by a resident shall not apply to such rental agreement without the written consent of the resident."

[2] The defendant claims that the trial court improperly held that the rule was unenforceable because it had not been filed with the department of consumer protection as required by General Statutes § 21-70 (e) (formerly § 21-70 [c]). A close reading of the trial court's memorandum of decision reveals that the trial court did not conclude that the rule was ineffective on the basis of § 21-70 (e), although it did cite *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 546 A.2d 805 (1988), appeal dismissed, 489 U.S. 1002, 109 S. Ct. 1104, 103 L. Ed. 2d 169 (1989). *Eamiello* recognized that, in accord with § 21-70 (c) (now § 21-70 [e]), no rule or regulation promulgated by a mobile home park owner concerning a resident's

but did not award him any monetary damages.[3] The defendant appeals from the trial court's judgment, claiming that the rule does comport with the requirements of § 21-70 (d). We affirm the decision of the trial court.

The defendant operates a mobile home park consisting of 188 mobile homes. The park has a main entrance situated along a public roadway, but access to almost all of the individual mobile homes is provided by way of several private roads within the park. In 1958, the defendant promulgated rule nine, prohibiting the operation of motorcycles within the park.[4] Although the rule prohibits the operation of motorcycles within the park, park residents are permitted to own motorcycles, and the defendant has provided an area at the park's entrance where they may be parked.[5] Other motor vehi-

use and occupancy of the premises, other than a change in rent, shall be effective until it is filed with the department of consumer protection. Id., 633.

The defendant further argues that the trial court incorrectly applied the doctrine of preemption in determining that the rule was invalid. We agree. The rule was not promulgated by a governmental body that is inferior to the state legislature and does not intrude on the state's ability to govern the speed or noise of motorcycles. See *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 705, 519 A.2d 49 (1986). Thus, the doctrine of preemption is not applicable. The judgment of the trial court, however, did not rest on the application of the doctrine.

[3] The defendant claims that the trial court improperly placed the burden of proof on the defendant to establish the validity of the rule, rather than placing the burden on the plaintiff to establish the invalidity of the rule. We find this claim to be without merit, as the trial court expressly stated in its memorandum of decision: "Challenging a regulation is not an easy task. The burden is clearly on the plaintiff."

[4] Rule nine provides that "[m]otorcycles of a tenant shall be allowed to be parked on their lot provided the motor is kept off and it is walked to and from your lot to the entrance drive. Your guest with a motorcycle must park it at the end of the entrance drive and walk to your lot. Starting of the motor vehicle to test or actual operation in the park is prohibited and the park can bar your keeping the motorcycle in the park."

[5] The defendant sought to introduce into evidence a petition, signed by park residents, that stated that they were in favor of the prohibition on the operation of motorcycles within the park. The petition, however, was not marked as an exhibit for identification and, therefore, we need not consider its admissibility.

cles, however, may be operated within the park, as long as their speed does not exceed ten miles per hour. At trial, the defendant's general manager testified that the purpose of rule nine was to protect the residents of the park from the increased hazards and noise produced by motorcycles and to reduce the problem of enforcing speed limits within the park. Rule nine is included in the standard rental agreement that all tenants are required to sign upon moving into the park.

The plaintiff is a resident of the park and a motorcycle owner. The plaintiff's home is located approximately one quarter of a mile from the entrance of the park. Because the plaintiff chooses not to park his motorcycle in the area provided near the park entrance, he must push his motorcycle between his home and the park's entrance each time he wants to use it so as not to violate the provisions of rule nine. The plaintiff brought suit against the defendant seeking damages and a declaratory judgment that rule nine violates § 21-70 (d) because it is overbroad and not reasonably related to the promotion of the residents' convenience, safety or welfare. The plaintiff also claimed that rule nine violates § 21-70 (d) because it does not apply to all residents fairly, as it permits the owners of certain vehicles to use park roads while denying this privilege to owners of other types of vehicles.

The defendant counters that because rule nine does not regulate an area that § 21-70 (d) was intended to address, it is permissible, notwithstanding the fact that it might violate the specific language of § 21-70 (d). Additionally, the defendant contends that, in any event, rule nine does, in fact, comport with the express provisions of § 21-70 (d). We reject both of these arguments.

The defendant argues that the purposes of § 21-70 (d) are the prevention of economic abuse of tenants by

mobile home park owners and the prevention of poor park conditions and health hazards. The defendant claims that the legislative history of the statute indicates that mobile home park owners could continue, after the passage of the statute, to adopt rules concerning use and occupancy as long as the rules were not violative of these purposes. The defendant claims that a rule banning the operation of motorcycles in a mobile home park is a permissible rule within the scope of the legislation because the rule is not aimed at one of the above cited abuses.

It is well settled that "[i]f the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive since where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended, but what intention it expressed by the words that it used." *Kilduff* v. *Adams, Inc.,* 219 Conn. 314, 336, 593 A.2d 478 (1991); *Collins* v. *Goldberg,* 28 Conn. App. 733, 737, 611 A.2d 938 (1992). The words employed by the legislature in § 21-70 (d) are clear and unambiguous and therefore we will not look behind the statute's words in an effort to ascertain the theoretical limits of the provision's scope. We thus reject the defendant's argument that § 21-70 (d) does not make rule nine unenforceable because § 21-70 (d) is concerned only with restrictions pertaining to economic abuse, poor park maintenance and health hazards.

As the trial court correctly noted, "[t]he operation of mobile home parks is not a totally private concern—it is subject to some governmental overview." This overview comes in the form of § 21-70 (d). Under § 21-70 (d), the owner of a mobile home park may adopt any rule affecting a resident's use or occupancy of the premises, but the rule will be enforceable only if it complies with all of the five enumerated requirements of the stat-

ute. The plaintiff concedes that rule nine complies with the last two requirements of § 21-70 (d). Thus, we must examine rule nine in conjunction with the provisions of § 21-70 (d) (1), (2) and (3) to determine whether the rule complies with these requirements. The rule is unenforceable if it fails to comport with any one of these three subdivisions.

General Statutes § 21-70 (d) (1) and (2) must be analyzed in conjunction with each other because they are interrelated. Subdivision (2) provides that the rule in question must be "reasonably related to the purpose for which it is adopted." Subdivision (1) establishes that the only permissible purpose of a rule, "is to promote the convenience, safety or welfare of the residents . . . ."[6] Therefore, regardless of any reasonable relationship between a rule and its purpose, the rule must first be determined to have been promulgated for the promotion of convenience, safety or welfare of the park's residents. At trial, the general manager of the park testified that rule nine was enacted for safety and noise reasons.[7] The avowed purpose of the rule is thus permissible under subdivision (1). The question then becomes whether there is a rational relationship between rule nine and the convenience, welfare or safety of the park's residents.

---

[6] Although subdivision (1) also contains two other permissible purposes, namely, to "preserve the owner's property from abusive use or [to] make a fair distribution of services and facilities held out for the residents generally," as the trial court correctly observed, this case is not concerned with these two purposes.

[7] The testimony was as follows: "The reason is our roads are private roads, not public right-of-way. We have a speed limit of ten miles an hour which is very difficult to enforce, particularly with existing residents as well as their guests and we do not feel the addition of motorcycles which have a tendency to go faster than passenger cars, being allowed on our roads. If—if we are forced to allow them, it is not just allowing Mr. Cox's motorcycle, it's allowing any and all motorcycles and therefore we would increase hazards on our roads. . . ." Noise was later cited as an additional reason for the adoption of rule nine.

We conclude that rule nine does not comply with subdivision (2) of § 21-70 (d), because it is not "reasonably related to the purpose for which it is adopted." Section 21-70 (d) (2). The defendant advanced only two reasons for the promulgation of rule nine, safety and noise. As the plaintiff correctly points out, the rule, on its face, does not address speed or noise but bans all motorcycles, regardless of how they are operated. The defendant argues that rule nine is reasonably related to the purpose for which it is adopted because "motorcycles are generally noisier than automobiles, and . . . motorcycles, because of their instability and the additional attention required of their operator, pose a prospective hazard in a mobile home park."

The trial court stated that it received no credible evidence that the purpose of rule nine was related to the prevention of noise, speed or safety. Without such evidence, no rationale exists for banning the operation of all motorcycles on the ground that they are deleterious to the welfare or safety of the residents, while allowing the operation of all other motor vehicles, including vans, trucks or buses. Cf. *Levine* v. *Police Commission,* 28 Conn. App. 344, 360, 612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 923 (1992).

We agree with the trial court and courts in other jurisdictions that have held that the proper solution to any problem of motorcycles operating at excessive and unsafe speeds is to enforce the speed limits, not to place a blanket ban on the use of motorcycles. The Michigan Court of Appeals rejected a similar motorcycle ban premised on safety reasons in *Great Lakes Motorcycle Dealers Assn., Inc.* v. *Detroit,* 38 Mich. App. 564, 196 N.W.2d 787 (1972). In striking down a city ordinance that precluded the operation of motorcycles in certain areas of the city, premised on safety reasons, the court held: "Since the problems of excessive speed and noise are not problems which relate solely to the

nature and manner of operation of motorcycles, it is unreasonable and arbitrary to deny the use of the public streets to motorcycles, and yet, allow automobiles to continue to use those streets. The proper solution to the problems of excessive speed and noise is the enforcement of the speed and noise laws and ordinances." Id., 567; accord *Springfield Park District* v. *Buckley,* 140 Ill. App. 3d 524, 488 N.E.2d 1071 (1986); *American Motorcyclist Assn.* v. *Park Commission,* 412 Mass. 753, 592 N.E.2d 1314 (1992); *Rogers* v. *Provincetown,* 384 Mass. 179, 424 N.E.2d 239, 242 (1981); contra *American Motorcyclist Assn.* v. *St. Louis,* 622 S.W.2d 267 (Mo. App. 1981).

The defendant argues that the cases cited above are inapposite because they concern the interpretation of municipal regulations and the relationship between the public and government, rather than regulations promulgated by a private landlord that apply to its tenants. We agree with the trial court that the defendant's argument "would be true if our legislature had not enacted Chapter 412. [Due to the enactment of Chapter 412, however,] mobile home park owners may only enact rules which meet certain guidelines. Thus [these] cases are relevant to this situation." The rights of a mobile home park owner vis-a-vis his tenants are limited by the restrictions placed on that relationship by § 21-70 (d).

Although the cases we have cited pertain to municipal regulations and ordinances, they are analogous to the present case. For example, in *American Motorcyclist Assn.* v. *Park Commission,* supra, a town park commissioner promulgated a regulation banning the use of motorcycles on the nonpublic roads of the park.[8]

---

[8] The regulation at issue provided in relevant part: "No person shall operate any motorized two wheeled cycle, such as a moped or motorcycle, on the roadways and/or within D.W. Field Park." *American Motorcyclist Assn.* v. *Park Commission,* 412 Mass. 753, 753 n.2, 592 N.E.2d 1314 (1992).

The regulation was promulgated in response "to complaints from citizens concerning the speed, noise, and congregation of motorcycles." Id., 755. The commissioner had adopted the regulation pursuant to authority given to him by Massachusetts General Law ch. 90, § 18, providing that he could "prohibit the use of ways in a park by motor vehicles, may regulate their speed, and may make regulations governing the use and operation of motor vehicles on parkways." Id., 754 n.5. The Supreme Judicial Court of Massachusetts invalidated the regulation on two grounds. The court found that the regulation was inconsistent with a state statute giving citizens a statutory right to operate a motor vehicle on the roads of the commonwealth. The court also found the regulation invalid because the commissioner had exceeded his statutory authority. "While G.L. c.90, § 18, gives park commissioners the right to regulate the use and operation of motor vehicles, or ban them entirely, it does not allow the selection of a particular class, e.g. motorcycles, for prohibition." Id., 757.

Section 21-70 (d) similarly limits the authority of mobile home park owners to restrict the use of the private roads within its complex. Thus, while not controlling law, the cases cited are sufficiently analogous to the present case to be useful in determining if rule nine violates § 21-70 (d). We find persuasive those cases that have determined that a blanket ban on the use of motorcycles "sweeps too broadly and arbitrarily discriminates against motorcyclists who would otherwise operate their vehicles in compliance with regulations prohibiting speeding . . . ." *Springfield Park District* v. *Buckley,* supra, 531.

In arguing that the above cases are inapposite to the present case, the defendant urges us to follow the decision of the New York Court of Appeals in *Miller* v. *Valley Forge Village,* 43 N.Y.2d 626, 374 N.E.2d 118, 403 N.Y.S.2d 207 (1978). *Miller* involved a declaratory judg-

ment action brought by tenants of a mobile home park challenging two park rules, one banning "For Sale" signs and the other restricting the installation of air conditioners. The tenants argued that these rules were unenforceable because they undermined the broad protections guaranteed by § 233 of New York's Real Property Law.[9] The Court of Appeals agreed with the conclusion of the trial court "that the rules were not only adopted by and uniformly applied to all tenants, but for the vast majority were actually an inducement to rent space from the defendant." Id., 629. The court, however, also noted that no request to install a window air conditioner had ever been denied to any tenant, nor had any tenant's attempt to sell his home ever been frustrated by the prohibition on "For Sale" signs.

In contrast, the rule here is an absolute ban on the use of motorcycles, rather than a limited restriction on their use. The trial court found that there was no credible evidence that motorcycles are noisier or more hazardous to the safety of residents than other motor vehicles, such as cars, vans and trucks, which are permitted within the park. We therefore find more persuasive the conclusion of the dissent in *Miller*. "While it is recognized that a noisy air conditioner may disturb the relative peace and tranquility attendant to the suburban lifestyle, [the rule] unwarrantedly presumes the existence of a nuisance and attempts its abatement

---

[9] At the time of the action in *Miller*, New York Real Property Law § 233 (f) (3) (e) (now § 233 [i] [1] and [2]) provided in relevant part: "No mobile home park owner or operator shall deny any mobile home tenant the right to sell his mobile home [and] . . . shall not exact a commission or fee . . . unless the mobile home park owner or operator has acted as agent for the mobile home owner in the sale pursuant to a written contract." See *Miller* v. *Valley Forge Village*, 43 N.Y.2d 626, 630, 374 N.E.2d 118, 403 N.Y.S.2d 207 (1978).

New York Real Property Law § 233 (f) (3) (b) provided that park owners were forbidden from "restrict[ing] the installation . . . of any [electric or gas] appliance." See *Miller* v. *Valley Forge Village*, supra, 629–30. This section was repealed. L.1984, c. 910, § 1, eff. Jan. 1, 1985.

before it is shown to exist. Action taken which has no foundation in fact or reason is, by definition, arbitrary and capricious." Id., 632.

We therefore conclude that rule nine is unenforceable because it is not "reasonably related to the purpose for which it is adopted," as required by General Statutes § 21-70 (d) (2). We need not examine § 21-70 (d) (3) because the rule is unenforceable if any subdivision is not satisfied.

The judgment is affirmed.

In this opinion the other judges concurred.